UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
ANDREW S. COHEN,

                Plaintiff,

    -v-

AVANADE, INC., MATTHEW MCCAFFERTY, and
AZIZ VIRANI,

                Defendants.
------------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/15/2012

11 Civ. 4314 (JMF)

OPINION AND ORDER

JESSE M. FURMAN, District Judge:

      This action, initially filed in New York State Supreme Court, and removed here pursuant to Title 28, United States Code, Sections 1332 and 1441, arises out of claims by Plaintiff Andrew S. Cohen against his former employer, Avanade Inc., and two Avanade employees, Matthew McCafferty and Aziz Virani. In particular, in his amended complaint (the "complaint"), filed on May 17, 2011, Plaintiff asserts claims for breach of contract; fraudulent inducement; malicious, fraudulent, oppressive and/or reckless conduct; harm to professional reputation; negligence; and negligent misrepresentation. Defendants now move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for dismissal of the complaint in its entirety. For the reasons stated below, Defendants' motion to dismiss is GRANTED and the complaint is dismissed.

## BACKGROUND

      On a motion to dismiss, a court may consider facts stated in the complaint, any documents attached to the complaint, and any documents incorporated by reference into the complaint. *See, e.g.*, *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2nd Cir. 2005). Where the claim is for breach of contract, as is the case here, the complaint is deemed to incorporate the alleged contract by reference because the alleged contract is integral to the claim.

*See, e.g.*, *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d Cir. 2005).  Accordingly, the following facts are taken from the complaint and from documents referenced therein, and are assumed to be true for purposes of this motion.  *See, e.g.*, *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009).

Defendant Avanade Inc. ("Avanade" or "the company") is a Washington state corporation.  At all times relevant to this action, Defendant McCafferty was a vice president and Defendant Virani was an executive vice president of Avanade.  (Compl. ¶¶ 3-4).  In February 2009, McCafferty and Virani began recruiting Cohen for a position as a Business Development Executive in Application Management at Avanade.  (*Id.* ¶ 5).  During the recruitment process, McCafferty and Virani made various representations to Cohen regarding Avanade's application management capabilities.  Specifically, the complaint alleges that McCafferty and Virani told Cohen that Avanade possessed a "true, well-established, fully capable, and experienced Application Management delivery system," with deal pricing, legal, and delivery teams that could "deliver complex, multi-year, multi-million dollar application management deals to its customers."  (*Id.* ¶¶ 6, 41).  Relying on these representations, Cohen accepted employment as a Business Development Executive in Application Management.  (*Id.* ¶ 7).

Avanade formally offered Cohen the position of Business Development Executive by letter dated May 5, 2009 (the "Offer Letter").  (Maatman Decl. Ex. A).  To the extent relevant here, the Offer Letter provided that Cohen would be paid a base salary of $120,000 per year and that, "based upon the terms and conditions" of the Avanade Sales Compensation Plan (the "Plan"), he would be "eligible" to earn incentive pay — that is, a bonus — if he met certain annual sales goals.  (*Id.*).  The letter emphasized, however, that the Plan was "not a contract of employment" and was "subject to change."  (*Id.*).  Further, the Plan itself (formally titled the

2

"Total Rewards Sales Compensation Plan") expressly provided that Avanade "reserve[d] the right to modify, suspend or terminate" the Plan "without notice" and "at its sole and absolute discretion." (Maatman Decl. Ex. B at 2, 8). With his signature, Cohen indicated his acceptance of the offer on May 8, 2009. (Maatman Decl. Ex. A).

According to the complaint, within weeks of starting at Avanade, Cohen discovered that the company did not have the application management capacities that McCafferty and Virani had represented. (Compl. ¶ 41). These shortcomings became more apparent to Cohen in late 2009 and the first half of 2010, when he sought to develop two potential multi-million dollar deals for the company: one with a company named Group M and the other with a company named Mediabrands. (*Id.* ¶¶ 15-27). Cohen alleges that these deals fell through because Avanade "lack[ed] . . . experience and capability in the Application Management service delivery space." (*Id.* ¶¶ 26, 51). If Avanade had possessed a "true, well-established, fully capable, and experienced Application Management delivery capability," the complaint asserts, the deals would have closed and, under the terms of the Plan, Cohen would have received a bonus of $180,000. (*Id.* ¶¶ 15-16, 28, 51). Cohen's employment with Avanade ended on September 16, 2010. (*Id.* ¶ 30).[1]

---

[1] In his memorandum of law in opposition to the motion to dismiss, Plaintiff claims that he ceased working for Avanade "without ever receiving any commission" and that, due to his reliance on Defendants' "empty promises," he lost "the commission, his base salary and job." (Opp. at 5). He also alleges that when he chose to join Avanade in the first instance, he did so at the expense of "other opportunities presented to him by other [information technology] services firms." (*Id.* at 2). These allegations appear nowhere in the complaint and therefore are not considered for purposes of this motion. *See, e.g.*, *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (stating that a complaint may not be amended by a party's brief in opposition to a motion to dismiss); *Guippone v. BH S & B Holdings LLC*, 681 F. Supp. 2d 442, 446 (S.D.N.Y. 2010) (stating that pleading defects cannot be cured in a party's brief in opposition to a motion to dismiss); *LaFlamme v. Societe Air France*, 702 F. Supp. 2d 136, 148 n.18 (E.D.N.Y. 2010) ("[T]he court disregards these allegations which are first raised in plaintiffs' motion papers

On March 4, 2011, Plaintiff filed a complaint in New York Supreme Court, County of New York, against Defendants Avanade, McCafferty, and Virani.  Cohen never served this complaint on Defendants, but instead filed an amended complaint with the same court on May 17, 2011, which he subsequently served on Defendants.  On June 24, 2011, Defendants removed the case from state court to this Court.  (Dkt. No. 1).  On September 9, 2012, the parties appeared at a pretrial conference before the Honorable Richard J. Holwell, United States District Judge, who was then presiding over this matter.  (Dkt. No. 10).  At the conference, Judge Holwell gave Plaintiff until September 30, 2011, to amend his complaint, but Plaintiff elected not to do so.  On October 31, 2012, Defendants filed this motion to dismiss the complaint for failure to state a claim upon which relief can be granted.

## DISCUSSION

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  *See, e.g.*, *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009).  To survive a Rule 12(b)(6) motion, however, the plaintiff must plead sufficient facts "to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant acted

---

because it is well-settled that a claim for relief may not be amended by the briefs in opposition to a motion to dismiss.").  Even if the Court were to consider these allegations, however, they would not affect the Court's ultimate conclusions.

4

unlawfully." *Id.* A complaint that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Further, if the plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* at 570.

With respect to claims alleging fraud, Rule 9(b) of the Federal Rules of Civil Procedure imposes a heightened pleading standard. Such claims must "state with particularity the circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b). To satisfy that standard, a complaint must "allege facts that give rise to a strong inference of fraudulent intent." *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 52 (2d Cir. 1995). In particular, "the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (internal quotation marks omitted). Failure to satisfy the Rule 9(b) standard is grounds for dismissal. *See, e.g.*, *id.* at 293; *Slayton v. Am. Exp. Co.*, 604 F.3d 758, 766 (2d Cir. 2010).

In the present case, Cohen alleges six causes of action: (1) breach of contract; (2) fraudulent inducement; (3) malicious fraudulent, oppressive and/or reckless conduct; (4) harm to professional reputation; (5) negligence; and (6) negligent misrepresentation. The Court will address each claim in turn.

**A.     Breach of Contract**

Cohen's first claim is for breach of contract. Under New York law, which the parties agree is controlling, *see, e.g.*, *Fed. Ins. Co. v. Am. Home Assurance Co.*, 639 F.3d 557, 566 (2d Cir. 2011) ("[W]here the parties agree that New York law controls, this is sufficient to establish choice of law."), there are four elements of a cause of action for breach of contract: (1) the

existence of a contract, (2) performance of the contract by one party, (3) breach by the other party, and (4) damages suffered as a result of the breach. *See, e.g.*, *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 142 (2d Cir. 2011). For a contract to exist, there must be "a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms." *Express Indus. and Terminal Corp. v. N.Y. State Dep't. of Transp.*, 715 N.E.2d 1050, 1053 (N.Y. 1999). "Generally, courts look to the basic elements of the offer and the acceptance to determine whether there is an objective meeting of the minds sufficient to give rise to a binding and enforceable contract." *Id.*

Here, Cohen claims that Defendant Avanade breached the Plan. (*E.g.*, Opp. at 9-10 (stating that the Plan "is an express contract" and that "Cohen properly and sufficiently alleged breach of contract by naming the Plan")). The fatal flaw in this claim, however, is that the Plan, by its terms, is not a contract. In fact, the Plan's acknowledgement page expressly states that "neither the Plan nor this acknowledgement are contracts . . . and do not promise specific treatment in specific circumstances." (Maatman Decl. Ex. B at 9). Similarly, the Offer Letter — which Cohen signed — references the Plan and explicitly states that it is "not a contract of employment." (Maatman Decl. Ex. A). Far from manifesting "mutual assent," therefore, this language unambiguously makes clear that the parties did not intend for the Plan to be a binding contract. *See, e.g.*, *Terwilliger v. Terwilliger*, 206 F.3d 240, 245 (2d Cir. 2000) (reaffirming that agreements are construed in accord with the parties' intent, "as expressed in the unequivocal language they have employed"). Cohen cannot maintain an action for breach of something that does not constitute a valid contract between the parties.[2]

---

[2] The Offer Letter, of course, constitutes a contract between the parties. But, as noted above, Cohen's breach-of-contract claim rests exclusively on the Plan, which is the only

Even if the Plan did constitute a binding contract, Cohen's claim would fail for two other reasons. First, under New York law, an employee cannot recover for an employer's failure to pay a bonus under a compensation plan that provides the employer with absolute discretion over bonus determinations. *See, e.g.*, *Namad v. Salomon Inc.*, 74 N.Y.2d 751, 752-53 (1989) (affirming dismissal of a claim where "the bonus clause unambiguously vests discretion regarding the amount of bonus compensation to be awarded in defendants' management"); *Hunter v. Deutsche Bank AG, N.Y. Branch*, 866 N.Y.S.2d 670, 671 (App. Div. 1st Dep't 2008) ("Plaintiffs' claims for breach of contract lack merit in view of the unambiguous language of their contracts and the employee handbook plainly making bonus awards solely and completely a matter of defendant's discretion."). That is the case here. The Plan unambiguously gives Avanade discretion to "interpret and apply the Plan as it deems appropriate," and expressly states that Avanade "reserves the right to modify, suspend or terminate any and all sales compensation plans at its sole and absolute discretion, including modifying the eligibility of participants . . . ." (Maatman Decl. Ex. B at 8-9; *see also id.* at 8 ("Avanade has the sole discretion to resolve any ambiguities in this plan."); *cf. id.* at 8 ("In no event shall a sales professional be deemed to have a vested right . . . to any payment hereunder . . . .")).

Second, Cohen cannot claim any entitlement to a bonus under the terms of the Plan because he did not meet the sales goals that would trigger an incentive payment. Where a plaintiff alleges entitlement to a bonus under a contract, the claim fails as a matter of law if the plaintiff fails to allege that he or she met the conditions required to receive the bonus. *See, e.g.*,

---

document that could conceivably give rise to an entitlement to the bonus that Cohen seeks in this case. Neither Cohen's complaint nor his memorandum of law in opposition to the Defendants' motion to dismiss identifies any provision of the Offer Letter that was breached.

7

*Levion v. Societe Generale*, 822 F. Supp. 2d 390, 401 (S.D.N.Y. 2011) (dismissing the plaintiff's claim because the plaintiff did not allege that he had met the conditions to receive a bonus); *Vetromile v. JPI Partners, LLC*, 706 F. Supp. 2d 442, 449 (S.D.N.Y. 2010) ("[W]here an employee's contract either leaves the bonus in the employer's discretion or conditions it on an event that has not occurred, such as employment through a specific date, courts have decided such questions as a matter of law."). In this case, the Plan provides for bonuses if certain "annual sales and revenue" targets are met (Maatman Decl. Ex. B at 2), and Cohen, by his own admission, failed to meet the specified sales and revenue targets. Accordingly, even if the Plan did constitute a contract, Cohen's claim for breach of contract would fail as a matter of law.

Implicitly conceding the weakness of his contract claim, Cohen argues in his memorandum of law opposing the Defendants' motion to dismiss that this Court should treat his breach-of-contract claim as a claim for promissory estoppel. (Opp. at 9). A party may not defeat a motion to dismiss a contract claim, however, by recasting the claim as one for promissory estoppel. *See Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (holding that a complaint did not state a cause of action where the plaintiff had alleged the elements of a claim for the first time in a memorandum opposing the defendant's motion to dismiss); *Ifill v. N.Y. State Court Officers Ass'n*, 655 F. Supp. 2d 382, 393 (S.D.N.Y. 2009) (stating that a plaintiff "may not amend his complaint to add new claims by raising them for the first time in his motion papers."); *see also Butvin v. DoubleClick, Inc.*, No. 99 CIV. 4727 (JFK), 2000 WL 827673, at *13 (S.D.N.Y. June 26, 2000) (dismissing the plaintiff's promissory estoppel claim because it was first raised in his brief filed in opposition to the defendant's motion to dismiss); *In re 50 Pine Co., LLC*, 317 B.R. 276, 284 (Bankr. S.D.N.Y. 2004) (holding that the plaintiff could not

"bootstrap" a promissory estoppel claim into its complaint by raising it in a brief filed in opposition to a motion to dismiss).

Further, even if Cohen could properly raise promissory estoppel for the first time in his opposition papers, his claim would fail for either of two reasons. First, there is some doubt about whether New York law recognizes promissory estoppel in the employment context at all. *Compare Rojo v. Deutsche Bank*, No. 06 Civ. 13574 (HB), 2010 WL 2560077, at *7 (S.D.N.Y. June 23, 2010) ("New York law . . . does not recognize promissory estoppel in the employment context") (citing cases), *with Baguer v. Spanish Broad. Sys., Inc.*, No. 04-CV-8393 (KMK), 2007 WL 2780390, at *5-6 (S.D.N.Y. Sept. 20, 2007) ("[S]everal courts within the Second Circuit have held that New York does not recognize promissory estoppel as a valid cause of action in the employment context. . . . [T]his Court is aware of no New York State case that has similarly adopted a categorical rejection of promissory estoppel in the employment context . . . .") (internal quotation marks omitted). But if New York law does recognize such claims, it is plain that "changing . . . one's employment" — the gravamen of Cohen's allegations in this case — "is insufficient to establish the injury requisite to a promissory estoppel claim." *Baguer*, 2007 WL 2780390, at *6.

Second, and in any event, Cohen fails to allege either of the other elements of a promissory estoppel claim: a clear and unambiguous promise and reasonable and foreseeable reliance on that promise. *See, e.g.*, *Kaye v. Grossman*, 202 F.3d 611, 615 (2d Cir. 2000). Whatever representations the Defendants may have made about the capabilities of Avanade, Cohen does not allege that they made a clear and unambiguous promise that he would receive a bonus, let alone that he relied on such a promise. Nor could he, given the unambiguous terms of the Plan, discussed above, which make clear that bonus determinations are subject to Avanade's

discretion and set forth conditions for receiving a bonus, which Cohen did not meet. *See, e.g.*, *Bader v. Wells Fargo Home Mortg. Inc.*, 773 F. Supp. 2d 397, 415 (S.D.N.Y. 2011) (holding that the plaintiffs could not have relied on alleged oral promises to make bonus payments that contradicted the express terms of a written agreement); *Kaplan v. Capital Co. of Am. LLC*, 747 N.Y.S.2d 504, 505-06 (App. Div. 1st Dep't 2002) (dismissing a promissory estoppel claim because the plaintiff had no contractual right to a bonus and the company policy stated that the payment of a bonus was purely discretionary).

**B.     Fraudulent Inducement**

In his second cause of action, Plaintiff alleges that Defendants McCafferty and Virani made false representations regarding Avanade's application management system that induced him to accept an offer of employment. To state a claim for fraudulent inducement under New York law, "there must be a knowing misrepresentation of material present fact, which is intended to deceive another party and induce that party to act on it, resulting in injury." *Gosmile, Inc. v. Levine*, 915 N.Y.S.2d 521, 524 (App. Div. 1st Dep't 2010). Although a fraud claim may not generally be used "as a means of restating what is, in substance, a claim for breach of contract, . . . New York law specifically recognizes causes of action for fraud in the inducement when the misrepresentation is collateral to the contract it induced." *Wall v. CSX Transp., Inc.*, 471 F.3d 410, 416 (2d Cir. 2006) (internal quotation marks omitted); *see WIT Holding Corp. v. Klein*, 724 N.Y.S.2d 66, 68 (App. Div. 2d Dep't 2001) ("[A] misrepresentation of material fact, which is collateral to the contract and serves as an inducement for the contract, is sufficient to sustain a cause of action alleging fraud.").

Here, the alleged misrepresentations — McCafferty's and Virani's representations about Avanade's capabilities — are collateral to the contract insofar as the contract between Cohen and

10

Avanade says nothing about such matters.  Nevertheless, Cohen's claim fails for two reasons.  First, putting aside conclusory assertions of intent (*e.g.*, Compl. ¶¶ 48-49), Cohen fails to allege that Defendants knew or should have known that their statements — largely statements of subjective opinion — were false.  *See, e.g.*, *Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1108 (N.Y. 2011) (holding that, in a claim for fraudulent misrepresentation, a plaintiff must allege a misrepresentation or a material omission of fact which was "false and known to be false"); *Int'l Fin. Corp. v. Carrera Holdings Inc.*, 920 N.Y.S.2d 310, 310-11 (App. Div. 1st Dep't 2011) (holding that the plaintiffs' purportedly fraudulent statements were "expressions of hope and opinion," and therefore were not sufficient grounds to support defendants' fraudulent inducement counterclaim); *see also Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 143 (2d Cir. 2011) (noting that a claim for fraudulent inducement requires a party to plead "specific facts as to the fraud, including the misleading statements, speaker, time, place, individuals involved, and specific conduct at issue").  The closest the complaint comes to alleging that McCafferty and Virani knowingly made false statements is in referring to their participation in conversations in which the shortcomings of Avanade's system were openly discussed.  (Compl. ¶¶ 11, 24-25, 41).  But these conversations occurred months after Cohen began working at Avanade and, thus, fall short of establishing that when McCafferty and Virani made their alleged misrepresentations — that is, when they were recruiting Cohen — they knew or should have known that they were falsely portraying Avanade's capabilities.  *See, e.g.*, *Banco Espirito Santo de Investimento, S.A. v. Citibank, N.A.*, No. 03 Civ. 1537 (MBM), 2003 WL 23018888, at *13 (S.D.N.Y. Dec. 22, 2003) ("[Plaintiff] has failed to plead a cause of action for fraudulent inducement because it has not alleged that Citibank knew the statements to be false at the time the statements were made or that Citibank intended to defraud BESI.").

11

Second, the complaint also fails to satisfy the heightened pleading standard for fraud claims required by Rule 9(b) of the Federal Rules of Civil Procedure. As noted above, to satisfy that standard, a complaint must "allege facts that give rise to a strong inference of fraudulent intent." *Acito*, 47 F.3d at 52. More specifically, it "must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Lerner*, 459 F.3d at 290 (internal quotation marks omitted). In the present case, Cohen identifies the speakers, but gives only a general description of the statements that he contends were fraudulent and fails altogether to identify "where and when the statements were made." *Id.* Such failures are fatal to Plaintiff's fraudulent inducement claim. *See, e.g.*, *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004); *see also Schlenger v. Fid. Emp'r Servs. Co., LLC*, 785 F. Supp. 2d 317, 352 (S.D.N.Y. 2011) ("Plaintiff's failure to name individuals, identify detailed statements, or identify particular dates makes clear that as pleaded this claim lacks the specificity required by Rule 9.").

### C.   Malicious, Fraudulent, Oppressive and/or Reckless Conduct

Cohen's third cause of action alleges that Defendants' conduct was "malicious, fraudulent, oppressive and/or recklessly committed, with wanton disregard of the Plaintiff's rights," and exhibited "bad faith." (Compl. ¶¶ 48-49). As Defendants correctly assert, however, this is not a cause of action recognized under New York law. *See, e.g.*, *OFSI Fund II, LLC v. Canadian Imperial Bank of Commerce*, 920 N.Y.S.2d 8, 10 (App. Div. 1st Dep't 2011) ("[M]erely alleging that a breach of contract was 'maliciously intended' does not give the breach of contract claim a separate and independent identity as a tort claim.") (citation omitted); *cf. Contemporary Mission, Inc. v. Bonded Mailings, Inc.*, 671 F.2d 81, 85 (2d Cir. 1982) (holding that "[i]f the only interest involved . . . is holding a party to a promise, a plaintiff will not be

permitted to transform the contract claim into one for tort"). Moreover, Cohen offers no rejoinder to the Defendants' argument. Accordingly, he is deemed to have abandoned the claim. *See, e.g.*, *Lipton v. Cnty. of Orange*, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004) ("This Court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed."). For both reasons, Plaintiff's third cause of action can be, and is, dismissed.

### D.     Harm to Professional Reputation

In his fourth cause of action, Plaintiff asserts that because Avanade did not have the application management capacities that Defendants represented during the recruitment process, Avanade's deals with Group M and Mediabrands did not close and Plaintiff "endured professional embarrassment" and suffered damage to his professional reputation. (Compl. ¶¶ 51-54). Many courts have held, however, that there is no independent action for damage to reputation under New York law; instead, a claim for damage to reputation is treated as a claim for defamation. *See, e.g.*, *Hengjun Chao v. Mount Sinai Hosp.*, No. 11-1328-cv, 2012 WL 1292757, at *2 (2d Cir. Apr. 17, 2012) (summary order) ("New York law considers claims sounding in tort to be defamation claims . . . where those causes of action seek damages only for injury to reputation, [or] where the entire injury complained of by plaintiff flows from the effect on his reputation.") (alteration in original) (quoting *Jain v. Sec. Indus. and Fin. Mkts. Ass'n.*, No. 08 Civ. 6463 (DAB), 2009 WL 3166684, at *9 (S.D.N.Y. Sept. 28, 2009)); *Emmons v. City Univ. of N.Y.*, 715 F. Supp. 2d 394, 423 (E.D.N.Y. 2010) ("This cause of action dangerously approaches frivolousness. To start with, there is no general 'injury to reputation' cause of action under New York law . . . ."); *Baum v. Phillips, Appel & Walden, Inc.*, 648 F. Supp. 1518, 1537

(S.D.N.Y. 1986) ("New York does not recognize any cause of action for loss of reputation other than a claim for defamation.").

It is undisputed that Cohen has not alleged the necessary elements of defamation. *See, e.g., Peters v. Baldwin Union Free Sch. Dist.*, 320 F.3d 164, 169 (2d Cir. 2003). Instead, relying on *Singer v. Jefferies & Co., Inc.*, 553 N.Y.S.2d 346 (App. Div. 1st Dep't 1990), Cohen contends that he has adequately pleaded a "general" or "unspecified tort" under New York law. (Opp. at 13). In *Singer*, the plaintiff alleged that his trade and reputation were injured because his employer had unwittingly involved him in criminal wrongdoing that later became public. *See* 553 N.Y.S.2d at 348-49. The Appellate Division concluded that the facts could not be precisely categorized, but held, nonetheless, that "[a]s a matter of policy, justice and fairness, plaintiff should not be precluded from having his day in court simply because the hornbook index does not list the tortious acts herein involved." *Id.* The Court also noted, however, that the facts pleaded appeared to meet the elements of a fraud claim, *see id.* at 348 n.1, and applied New York's six-year limitations statute for fraud claims, *see id.* at 349.

Cohen's reliance on *Singer* is unavailing. In the twenty-two years since *Singer* was decided, the case has rarely been cited, and has never been cited — let alone adopted — by the New York Court of Appeals. The "few cases" that have cited *Singer* have "universally concluded that *Singer* did not create a catch-all tort." *Lines v. Cablevision Sys. Corp.*, No. 04 CV 2517 DRH ETB, 2005 WL 2305010, at *3 (E.D.N.Y. Sept. 21, 2005). Instead, they have narrowly applied the decision to hold that "certain allegations can be sustainable as tort actions if they are sufficiently analogous to an established tort action," such as fraud. *John St. Leasehold, LLC v. Capital Mgmt. Res., L.P.*, 154 F. Supp. 2d 527, 545 (S.D.N.Y. 2001), *aff'd*, 283 F.3d 73 (2d Cir. 2002); *accord Menaldi v. Pay-Per-View Network, Inc.*, No. 97 Civ. 6451 (HB), 1998

WL 230994, at *2 n.4 (S.D.N.Y. May 5, 1998), *aff'd sub nom. Menaldi v. Grp. W Broad., Inc.*, 182 F.3d 900, 1999 WL 486978 (2d Cir. July 9, 1999).[3] Here, the other torts alleged in the complaint adequately embrace Cohen's allegations that Defendants harmed his professional reputation, "making a *Singer* analysis inappropriate." *Eavzan v. Polo Ralph Lauren Corp.*, 40 F. Supp. 2d 147, 152 (S.D.N.Y. 1998). In other words, Cohen's fourth cause of action is "nothing more than an attempt to circumvent the obstacles to his [other] claim[s]." *Id.* As in *Eavzan*, the Court "will not accept [this] reformulation of the same facts into a separate cause of action." *Id.*

In any event, even assuming *arguendo* that *Singer* did apply, Cohen's claim would fail for either of two reasons. First, it is not plausible to conclude that Defendants caused any real harm to Cohen's professional reputation, particularly considering Cohen's twenty-five years of experience in the applications management field. (Opp. at 1; *see also* Compl. ¶¶ 10, 13). As the complaint alleges, the deals with Group M and Mediabrands did not close because Avanade lacked specific application management capabilities. There are no allegations that Avanade placed blame on Cohen for the failure of these deals to close, let alone that it did so publicly; nor does the complaint allege that potential clients attributed those failures to Cohen himself. In fact, the complaint itself alleges that representatives of Group M told Cohen that "they truly appreciated the significant effort *he* delivered to Group M during [the negotiations], but that they

---

[3]   This Court has found only one case in which a court relied on *Singer* to hold that a claim for injury to personal and professional reputation was valid for purposes of a motion to dismiss. *See M Sports Prods. v. Pay-Per-View Network, Inc.*, No. 97 Civ. 6451 (HB), 1998 WL 19998 (S.D.N.Y. Jan 20, 1998). Notably, that case was decided by the same judge who decided *Menaldi* a few months later, in which he held that "the court in *Singer* did not create a new catch-all cause of action, but merely held that since the claims asserted by plaintiff were analogous to various claims, including fraud, the plaintiff had stated a cognizable cause of action." *Menaldi*, 1998 WL 230994, at *2 n.4. This Court declines to rely on *M Sports Productions*.

had no confidence in *Avanade's* delivery capability." (Compl. ¶ 18 (emphases added)). Cohen may have developed remorse for having accepted the employment offer from Avanade, but it is implausible to conclude that Cohen suffered any adverse injury to his professional reputation due to the firm's alleged shortcomings.

Second, even if Cohen suffered harm to his reputation in connection with the Group M and Mediabrands deals, that injury cannot be attributed to Avanade. The negotiations with Group M did not commence until September 2009 (Compl. ¶ 17), at which point Cohen had been employed at Avanade for four months. By that point, he either knew or should have known the extent of Avanade's capabilities. Indeed, the complaint itself alleges that "[w]ithin weeks of Mr. Cohen's employment with Avanade," he discovered that Avanade did not possess the capabilities that McCafferty and Virani had represented to him. (Compl. ¶ 41). At that point, Cohen could easily have severed his ties with Avanade and cut his losses, with little or no harm to his professional reputation. Instead, he remained at Avanade, commencing negotiations with Group M in September 2009 and with Mediabrands in January 2010 — a full eight months after he began working at Avanade. Having failed to leave Avanade when he was on notice of the firm's alleged shortcomings, he cannot blame any consequential harm to his reputation on Avanade. He himself bears responsibility for his choice to stay.

### E.     Negligence and Negligent Misrepresentation

Plaintiff's fifth and sixth causes of action allege that Defendants acted negligently. Specifically, in his fifth cause of action, Cohen contends that Defendants owed a duty "to provide him with accurate advice which was in the Plaintiff's best interests" and that they breached this duty by telling him that Avanade possessed a "true, well-established, fully capable, and experienced Application Management delivery system and services." (Compl. ¶ 57). New

16

York law, however, does not recognize a cause of action for the negligent performance of a contract. *See, e.g.*, *RLI Ins. Co. v. King Sha Grp.*, 598 F. Supp. 2d 438, 444 (S.D.N.Y. 2009); *Med. Research Assocs., P.C. v. Medcon Fin. Servs., Inc.*, 253 F. Supp. 2d 643, 649 (S.D.N.Y. 2003). Thus, to prevail on a negligence claim, Cohen must demonstrate that Defendants breached a duty independent from their obligations under the contract. *See Carvel Corp. v. Noonan*, 350 F.3d 6, 16 (2d Cir. 2003). He has failed to do so. Indeed, conclusory assertions of a duty aside, the complaint does not state what duty of care Defendants owed, let alone how they breached that duty. *See Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 390 (1987) ("Merely charging a breach of a 'duty of care,' employing language familiar to tort law, does not, without more, transform a simple breach of contract into a tort claim."). Accordingly, Cohen's negligence claim must be dismissed. *See, e.g.*, *Abacus Fed. Sav. Bank v. ADT Sec. Servs., Inc.*, 18 N.Y.3d 675, 684-85 (2012) (dismissing a claim because the allegations that a breach of contract occurred as a result of gross negligence did not give rise to a duty independent of the contractual relationship).

Cohen's final cause of action — for negligent misrepresentation — fails as a matter of law for similar reasons. To prevail on a claim for negligent misrepresentation, a plaintiff must show that:

> (1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment.

*Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir. 2000). The special relationship requirement is satisfied only if the defendant owes the plaintiff a fiduciary duty. *See, e.g.*, *Stewart v. Jackson & Nash*, 976 F.2d 86, 90 (2d Cir. 1992).

Here, Plaintiff alleges that, "as prospective employer of the Plaintiff, the Defendants owed a duty to the Plaintiff to provide reliable and accurate information about the Avanade company." (Compl. ¶ 60). Courts have routinely held, however, that the relationship between employer (or prospective employer) and employee is not fiduciary in nature and thus does not constitute a "special relationship" for purposes of a negligent misrepresentation claim. *See, e.g.*, *Stewart*, 976 F.2d at 90; *Kwon v. Yun*, 606 F. Supp. 2d 344, 356 (S.D.N.Y. 2009); *Metzler v. Harris Corp.*, No. 00 Civ. 5847 HB, 2001 WL 194911, at *2 (S.D.N.Y. Feb. 26, 2001) (finding no fiduciary duty to support a negligent misrepresentation claim where the defendant "induc[ed] [the plaintiff] to leave a secure job and accept employment [with the defendant] based on the representation that he would receive commissions for any business he generated").[4]

Even if the complaint adequately alleged negligence and negligent misrepresentation, these causes of action still would fail because the New York Workers' Compensation Law is "the exclusive remedy to an employee . . . when such employee is injured . . . by the negligence or wrong of another in the same employ." N.Y. Workers' Comp. Law § 29(6) (McKinney 2011); *see also Ferris v. Delta Air Lines, Inc.*, 277 F.3d 128, 137-38 (2d Cir. 2001) (affirming

---

[4] Although the Second Circuit has expressly left open the question of whether Rule 9(b) applies to claims of negligent misrepresentation, *see Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 188 (2d Cir. 2004), several district courts have applied the Rule to claims, such as those here, that are premised on fraudulent conduct, *see, e.g.*, *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, No. 08 Civ. 2437 (RJS), 2011 WL 6034310, at *25 (S.D.N.Y. Dec. 5, 2011). In light of the foregoing, this Court need not decide whether Rule 9(b) applies. If it does, however, that is an additional basis for dismissal.

the dismissal of negligent hiring, retention, and supervision claims as "precluded by the exclusive remedy provisions of New York's Workers' Compensation statute"); *Morris v. Fordham Univ.*, No. 03 Civ. 0556 (CBM), 2004 WL 906248, at *1 n.1 (S.D.N.Y. Apr. 28, 2004) (declining to address a negligent misrepresentation claim on the ground that it was barred by the New York Workers' Compensation statute); *Torres v. Pisano*, 116 F.3d 625, 630 (2d Cir. 1997) (affirming the dismissal of common law negligence claims asserted on the basis of an alleged hostile work environment as barred by the New York's Workers' Compensation statute). Indeed, "[c]ourts routinely dismiss workplace negligence claims . . . in light of the exclusive remedy provision of the Workers' Compensation statute." *Jean-Louis v. Am. Airlines*, No. 08 Civ. 3898 (FB), 2010 WL 3023943, at *3 (E.D.N.Y. July 30, 2010) (collecting cases). Although workers' compensation exclusivity does not apply where the wrong complained of was intentional, "that exception is obviously not applicable to [plaintiff's] claim of *negligence*." *Torres*, 116 F.3d at 640. Accordingly, Plaintiff's negligence and negligent misrepresentation claims are clearly barred.

Perhaps recognizing the legal weaknesses of his negligence and negligent misrepresentation claims, Cohen ultimately calls on the Court to allow these claims to go forward "as a matter of public policy." (Opp. at 14). Far from being convincing, however, this naked appeal to policy merely underscores the failure of Cohen's claims as a matter of law. The sole question presented on this motion is whether Cohen has stated a claim for which relief can be granted under the law. *See, e.g.*, *Eternity Global Master Fund Ltd.*, 375 F.3d at 176. He has not. *See, e.g.*, *Curti v. Girocredit Bank*, No. 93 Civ. 1782 (PKL), 1994 WL 48835, at *4 (S.D.N.Y. Feb. 14, 1994) (holding that conclusory assertions that the defendant's acts violated

the public policy of the State of New York do not state a claim for relief). On that basis, his claims must be dismissed.

## CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss (Dkt. No. 12) is GRANTED and Plaintiff's complaint is DISMISSED. The Clerk of the Court is directed to close this case.

SO ORDERED.

Dated: June 15, 2012
      New York, New York

_____
JESSE M. FURMAN
United States District Judge